UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> TERESA LYNN PETERSON, <br><br> Defendant. | 4:20-CR-40072-02-KES <br><br> **ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE** |

Defendant, Teresa Lynn Peterson, filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Docket 230. The Federal Public Defender filed a supplement to Peterson's motion. Docket 244. Plaintiff, the United States of America, filed a response to the motion. Docket 245. The Federal Public Defender filed a reply to the United States' response. Docket 246. For the following reasons, Peterson's motion for compassionate release is granted.

## BACKGROUND

In February 2022, this court sentenced Peterson to the mandatory minimum sentence of 10 years in prison for conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Docket 151 at 2; Docket 149 ¶ 122. Peterson is currently serving this sentence at FMC Carswell, a federal medical center in Texas. Her projected release date is August 14, 2029. *See Find an Inmate*, Fed. Bureau of Prisons, (register number 18645-273; last visited June 24, 2026).

1

Peterson seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), based on her medical conditions. Docket 230 at 3-8. The United States agrees that Peterson has established "extraordinary and compelling reasons" making her eligible for a reduction. Docket 245 at 2-3. But it leaves for the court the decision whether the factors in 18 U.S.C. § 3553(a) weigh in favor of granting Peterson's motion. *Id.* at 2.

### DISCUSSION

Sentences are final judgments, meaning a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C § 3582(c). Congress passed The First Step Act (FSA) in 2018, facilitating an exception to the finality of sentences. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In relevant part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). A reduction in sentence must consider the 18 U.S.C. § 3553(a) sentencing factors and be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The Sentencing Commission's policy statement on compassionate release requires "extraordinary and compelling reasons" to warrant a sentence

2

reduction and that the defendant not pose a danger to the public. U.S.S.G. § 1B1.13(a)-(b). The policy statement was amended on November 1, 2023, to reflect the FSA's authorization for federal courts to rule on compassionate release motions initiated by defendants. U.S.S.G § 1B.13, amend. 814. Amendment 814 to the Sentencing Commission policy statement also expands the list of extraordinary and compelling reasons justifying compassionate release from federal detention. *See id.*; *2023 Amendments in Brief*, U.S. Sent'g Comm'n, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf (last visited June 24, 2026).

## I.      Administrative Exhaustion

Before the FSA's passage, only the Bureau of Prisons (BOP) Director had the authority to bring a compassionate release motion on a defendant's behalf. *See* 18 U.S.C. § 3582(c)(1)(A) (2002), *amended by* 18 U.S.C. § 3582(c)(1)(A) (2018). With the enactment of the FSA, Congress has permitted courts to grant a motion for a reduction in sentence filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of thirty days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Peterson submitted an electronic administrative request to the warden on October 22, 2025. Docket 231 at 550. The warden denied her request on November 17, 2025. *Id.* at 551. On December 10, 2025, Peterson's respiratory therapist submitted a second request on her behalf. Docket 241 at 560. The

3

warden denied that request on December 27, 2025. *Id.* at 561. The United States does not contest that Peterson has exhausted her administrative remedies. Docket 245 at 2. Thus, the court considers Peterson's motion on the merits.

## II.    Extraordinary and Compelling Reasons

Congress directed the Sentencing Commission to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission's policy statement, as amended in November of 2023, responded by identifying six categories of "extraordinary and compelling reasons" justifying compassionate release. U.S.S.G § 1B1.13(b)(1)-(4), amend. 814. The first four categories pertain to a defendant's: (1) medical circumstances; (2) advanced age and deteriorating health in combination with the amount of time served; (3) compelling family circumstances; and (4) victimization by correctional staff while in custody. *Id.* A fifth catch-all category exists for a "circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The sixth category arises if the defendant has received an unusually long sentence, served at least ten years, and a change in law produces a gross disparity between the sentence being served and the sentences likely to be imposed at

4

the time the motion was filed, after considering the individual circumstances of the defendant. U.S.S.G. § 1B1.13(b)(6).

Rehabilitation of the defendant is not an extraordinary and compelling reason in and of itself but "may be considered in combination with other circumstances in determining whether and to what extent a reduction" in sentence is warranted. U.S.S.G. § 1B1.13(d). An extraordinary and compelling reason need not be unforeseen at the time of sentencing to warrant compassionate release. U.S.S.G. § 1B1.13(e).

Peterson argues that compassionate release is warranted under the medical circumstances category of other extraordinary and compelling reasons. Docket 230 at 1. Peterson's conditions include severe chronic obstructive pulmonary disease (COPD); chronic respiratory failure with hypoxia, on home oxygen therapy; chronic cough; and bronchiectasis. Docket 241 at 340. Peterson's respiratory therapist at the BOP, Adriane Backus, requested compassionate release for Peterson explaining that Peterson's "health condition is declining quickly," the prison has limited ability to meet her needs, she needs continuous portable oxygen that the prison cannot provide, and her worsening condition has already or will soon have an adverse impact on her activities of daily living. *Id.* at 560. Peterson also suffers from severe COPD with a history of recurrent pneumonia and hospitalization. *Id.* at 55. She is oxygen dependent and in Care Level 4. *Id.* Her condition is described as "end stage COPD (emphysema/bronchiectasis), severely diminished diffusion capacity

5

plethysmography, Hx amphetamine abuse and tobacco use, and very poor exertional capacity." *Id.* at 3.

The respiratory therapist indicates that the BOP is unable to provide the portable continuous flow oxygen that Peterson needs. *Id.* at 560. In June of 2025, when Peterson was seen by an outside pulmonology specialist, she recommended that Peterson be on "continuous flow oxygen." *Id.* at 515. In December of 2025, BOP Physician Assistant D. Cates noted that Peterson needs continuous flow portable oxygen that the BOP cannot provide, and she recommended that Peterson pursue a reduction in sentence. *Id.* at 71-72. At Peterson's most recent pulmonary telemedicine appointment on April 6, 2026, the medical records indicate that since December 2025, Peterson has had increasing CO2 (carbon dioxide) levels and that she felt much better on continuous oxygen provided during a hospital stay in March than she does while using the pulse oxygen she has at the prison. *Id.* at 338. It was specifically noted that Peterson "would likely benefit from continuous flow oxygen rather than pulsing flow[.]" *Id.* at 340. The medical records provided from the last year illustrate Peterson suffers from the following ongoing health problems:

- May 27, 2025: chest pain, shortness of breath, and dyspnea on exertion (DOE). *Id.* at 232;
- June 7, 2025: shortness of breath, difficulty breathing, and cough. *Id.* at 218, 224;
- June 11, 2025: continued chest pain and shortness of breath. *Id.* at 208;
- June 29, 2025: right sided pleuritic chest pain, difficulty breathing, constant coughing, and wheezing. *Id.* at 195, 198;

- August 12 & 13, 2025: shortness of breath, cough, and difficulty breathing. *Id.* at 176, 180;

- October 12, 2025: wheezing, chronic cough, burning feeling in her airways, and trouble breathing. *Id.* at 135, 139;

- October 28, 2025: left side bottom rib chest pain. *Id.* at 121, 123;

- November 12 & 13, 2025: shortness of breath, chest pain, and difficulty walking. *Id.* at 108, 112, 118;

- December 8, 2025: trouble breathing. *Id.* at 75;

- December 10, 2025: dyspnea on exertion, resting shortness of breath, "great deal of difficulty with ADLs due to activity restrictions from her disease state." *Id.* at 71;

- December 15, 2025: pain with inspiration. *Id.* at 68;

- December 16, 2025: shortness of breath, difficulty walking short or long distances, extreme tiredness, difficulty with activities of daily living, diagnosed with lingular pneumonia and prescribed antibiotics. *Id.* at 65 (also noting "Pt here at clinic multiple times with Sob/DOE").

- December 22, 2025: continued pain in the lower left chest that is worse with breathing even after almost a week on antibiotics. *Id.* at 61-62 (noting that Peterson was provided ibuprofen);

- February 25, 26, 27, 2026: shortness of breath, trouble breathing, and worsening cough. *Id.* at 27, 29, 40, 42, 44;

- March 4, 2026: difficulty breathing, left-sided numbness, dizziness, and "severely elevated" blood pressure before receiving breathing treatment. *Id.* at 22-24. Peterson was taken to the emergency room and hospitalized until March 6. *Id.* at 24, 364; The hospital ruled out a stroke and diagnosed her with headaches (potentially complicated migraines). *Id.* at 364, 382.

- March 13, 2026: worsening shortness of breath for the last week. *Id.* at 3.

The United States agrees that Peterson "meets the criteria for extraordinary and compelling reasons warranting a sentence reduction" under U.S.S.G. § 1B1.13(b)(2), medical circumstances. Docket 245 at 2-3. It agrees that her medical conditions as set forth by the Federal Public Defender in Docket 244 are supported by documentary evidence. *Id.* After a review of

Peterson's medical records, the court agrees and finds that Peterson meets the criteria for extraordinary and compelling reasons warranting a sentence reduction.

### III.    Section 3553(a) Factors

The court next looks to the factors set forth in 18 U.S.C. § 3553(a) and the public safety interests provided in 18 U.S.C. § 3142(g). *See* 18 U.S.C. § 3582 (c)(1)(A); U.S.S.G. § 1B1.13. 18 U.S.C. § 3553(a). Under U.S.S.G. § 1B1.13, the court should not reduce a defendant's sentence unless the court determines that "the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). The court previously discussed the § 3553(a) factors in its order denying Peterson's first motion for compassionate release. Docket 196 at 15-16. While the court determined that release was not warranted at the time, *see id.*, the court now finds that the § 3553(a) sentencing factors and the policy statements issued by the Sentencing Commission confirm that compassionate release is warranted in this case.

The nature and circumstances of the offense and Peterson's personal history and characteristics support a sentence reduction. *See* 18 U.S.C. § 3553(a)(1). Peterson was responsible for 4.5 kilograms of methamphetamine during her involvement of the current offense. Docket 149 ¶ 63. Her prior criminal history consists of two felony drug offenses and misdemeanor convictions for petty theft and driving under the influence. *Id.* ¶¶ 80-90. While Peterson's offense was serious, she was a minor participant in the offense. *Id.*

¶ 71. Additionally, Peterson has a history of alcohol and methamphetamine addiction, *id.* ¶ 110, but she has completed drug education while incarcerated, Docket 241 at 550.

Peterson's complicated medical needs also support a reduction in sentence. 18 U.S.C. § 3553(a)(2)(D). Peterson's health conditions have and are continuing to deteriorate, and the BOP is no longer able to provide the recommended medical care she needs. Peterson has a release plan, which indicates that she will live with a close friend in Sioux Falls and support herself via disability benefits, Social Security, and Medicaid. Docket 230 at 12. Peterson's release will allow her to access the medical care her health conditions now require.

Peterson has served over 4 years in prison, which is roughly 50% of her statutory term sentence. Docket 231 at 546. During that time, she also earned good conduct time of 162 days or about 5 months. *Id.* Additionally, the court recognizes that Peterson has been recommended for placement in home confinement starting in May 2027. Docket 241 at 551. A sentence reduction to time served in Peterson's case adequately reflects the seriousness of the offenses, provides just punishment, and avoids unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(2)-(6).

Peterson's rehabilitation in custody and her lack of a disciplinary record further support that she is a good candidate for early release. Though rehabilitation by itself is not an extraordinary and compelling reason, Peterson's rehabilitative efforts may be considered in conjunction with other

factors. *See United States v. Brown,* 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019). Those efforts may also be considered to determine whether she is a risk to the community under 18 U.S.C. § 3142(g).

From April 2022 to March 2023, Peterson completed 46 hours in various educational courses. Docket 241 at 559. Peterson also worked in the suicide companion program, where she received the awards for "Everyone's Favorite Grandma" in 2023 and the "Best Comeback" in 2024. Docket 244-2 at 10, 13. Due to her medical condition, however, Peterson has been unable to complete any courses or continue her work in the suicide watch companion program. Docket 241 at 551. Peterson does not have any disciplinary violations and has been listed at a low risk recidivism level. *Id.* at 551, 558. Thus, Peterson's personal history and post-sentencing conduct demonstrate that she would not pose a danger to the community if released. *See* U.S.S.G. § 1B1.13(a)(2).

Based on the foregoing, this court finds that Peterson's exacerbated health conditions and the BOP's inability to provide her with the continuous flow oxygen indicated as necessary by her medical providers meet the extraordinary and compelling reasons set by Congress. Thus, after careful consideration, the court concludes that the 3553(a) factors weigh in favor of early release, and Peterson does not pose a danger to the community under the relevant considerations in 18 U.S.C. § 3142(g).

## CONCLUSION

Peterson has satisfied the extraordinary and compelling reason standard for compassionate release. Thus, it is

1. ORDERED that Peterson's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Docket 230) is GRANTED.

2. Peterson's term of imprisonment is hereby reduced to time served, subject to the following paragraphs.

3. Execution of this order is stayed for fourteen (14) days to allow the Bureau of Prisons and United States Probation an opportunity to make the necessary arrangements for Peterson's release.

4. Upon release from BOP custody, Peterson will be on supervised release for a term of five (5) years.

5. The United States Probation Office shall prepare an amended judgment consistent with this order.

6. The following are the standard and special conditions of supervision that shall apply to Peterson.

**Standard Conditions of Supervision:**

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, you will receive instructions from the Court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the Court or the probation officer.

4. You must answer truthfully the questions asked by your probation officer.

5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements

(such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6. You must allow the probation officer to visit you at reasonable times, at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the Court.

12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13. You must follow the instructions of the probation officer related to the conditions of supervision.

**Special Conditions of Supervision:**

1.    You must not commit another federal, state, or local crime.

2.    You must not unlawfully possess a controlled substance.

3.    You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the Court.

4.    You must cooperate in the collection of DNA as directed by the probation officer.

Dated July 20, 2026.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

13